

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER PANELLI, individually, and all others similarly situated,<br><br>                           Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>                        Defendant. | Case No.: 24-cv-01218-H-DEB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>[Doc. No. 36.] |

On August 16, 2024, Defendant Target Corporation ("Target") filed a motion to dismiss Plaintiff Alexander Panelli's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and to strike certain class action allegations. (Doc. No. 36.) On September 20, 2024, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 39.) On September 24, 2024, the Court took the matter under submission. (Doc. No. 40.) On September 30, 2024, Defendant filed a reply. (Doc. No. 41.) On October 3, 2024, Defendant filed a notice of supplemental authority. (Doc. No. 42.) For the reasons below, the Court grants Defendant's motion to dismiss without leave to amend.

/ / /

/ / /

**Background**

1
The following factual background is taken from the allegations in Plaintiff's first
2
amended complaint. Defendant Target sells various bed sheets, which are advertised by
3
Target as having a "thread count" of 600 or more. (Doc. No. 18, First Amended Complaint
4
("FAC") ¶¶ 6–7.) Plaintiff alleges that "thread count" is a specific term used in the textile
5
industry, and the globally accepted measurement test for thread count is the ASTM D 3775
6
method. (Id. ¶ 8.) Plaintiff further alleges that a bedsheet with high thread count is more
7
desirable and worth an extra cost because "[h]igh thread counts have come to mean high
8
quality sheets, whether they be 'softer' or 'supple' or 'durable.'" (Id. ¶ 7.)
9

10
Plaintiff alleges that he purchased "a '100% cotton' queen sheet set of 'Threshold
11
Signature' sheets with a thread count of 800" from Defendant. (Id. ¶ 15.) Plaintiff provides
12
in his first amended complaint the following images depicting the actual packaging of the
13
bed sheets he purchased:

 

(Id.) As seen in the above images, the packaging states that the sheet set is "100% Cotton
Sateen" with a "800 Thread Count." (Id.) Plaintiff further alleges that the bed sheets he

purchased are substantially similar to all other 100% cotton sheets with an advertised thread count of 600 of higher sold by Defendant during the alleged class period. (Id. ¶ 19.)

Plaintiff alleges that independent testing using the ASTM D 3775 thread counting method was performed on the bed sheets he purchased, and the testing showed that the bedsheet set he purchased actually had a thread count of 288 rather than the stated thread count of 800. (Id. ¶ 18.) Plaintiff further alleges: "it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." (Id. ¶ 24; see also id. ¶¶ 29–33.) In light of this, Plaintiff contends that any marketing or advertising of 100% cotton bedsheets representing a thread count of 600 or higher is false and misleading. (Id. ¶ 24.)

On April 4, 2024, Plaintiff filed a class action complaint against Defendant Target in the Superior Court of California, County of San Francisco. (Doc. No. 1-1, Compl.) On May 8, 2024, Target removed the action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Doc. No. 1, Notice of Removal ¶ 3.)

On May 24, 2024, Plaintiff filed a first amended class action complaint ("FAC") against Target, alleging claims for: (1) violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 et seq.; and (2) violations of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq. (Doc. No. 18, FAC ¶¶ 55–80.) On July 15, 2024, the Northern California district court transferred the action to the United States District Court for the Southern District of California. (Doc. No. 25.)

By the present motion, Defendant Target moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the claims in Plaintiff's FAC with prejudice for failure to state a claim. (Doc. No. 36-1 at 1, 6–15, 23.) In addition, Target moves pursuant to Federal Rule of Civil Procedure 12(f) to strike certain class action allegations from the FAC. (Id. at 2, 15–21, 24.)

**Discussion**

**I.    Legal Standards for a Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal

24-cv-01218-H-DEB

conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## II.    Analysis

In the FAC, Plaintiff alleges claims against Defendant for violations of California's UCL and CLRA. (Doc. No. 18, FAC ¶¶ 55–80.) Defendant argues that these claims should be dismissed because Plaintiff has failed to adequately allege that a reasonable consumer would be deceived by the labeling at issue. (See Doc. No. 36-1 at 6–10; Doc. No. 41 at 1-4.)

Claims under the UCL and CLRA are governed by the "reasonable consumer" standard. McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1097 (9th Cir. 2023) (citing Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)). Under that standard, a plaintiff "must 'show that members of the public are likely to be deceived.'" Becerra v. Dr Pepper/Seven Up, Inc., 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting Williams, 552 F.3d at 938).

The reasonable consumer standard requires "more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)). Rather, a plaintiff must plausibly allege "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could

be misled.'" Id. (quoting Lavie, 105 Cal. App. 4th at 508); see also McGinity, 69 F.4th at 1097 ("The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers."). Put another way, "'[a] representation does not become "false and deceptive" merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.'" Lavie, 105 Cal. App. 4th at 507 (citation omitted). "Indeed, a plaintiff's unreasonable assumptions about a product's label will not suffice." Moore v. Trader Joe's Co., 4 F.4th 874, 882 (9th Cir. 2021); see also La Barbera v. Ole Mexican Foods Inc., No. EDCV202324JGBSPX, 2023 WL 4162348, at *11 (C.D. Cal. May 18, 2023) ("The bottom line is this: under Moore, the reasonable consumer does not approach purchasing decisions with a professorial genius or inclination toward exhaustive research, but she is also not a chump, too doltish or careless to engage [a] simple analysis." (citation omitted)).

Plaintiff's UCL and CLRA claims are based on his contention that Defendant's advertising and labeling of its 100% cotton bedsheets as having a "thread count" of 600 or higher is false and misleading. (See Doc. No. 39 at 1; Doc. No. 18, FAC ¶¶ 7–14, 18–19, 24.) Plaintiff provides two factual bases for his contention that Defendant's thread count representations are false and misleading. First, Plaintiff alleges that he purchased a set of 100% cotton bedsheets from Defendant with a represented thread count of 800, and independent testing was then performed on the sheets using the ASTM D 3775 thread counting method. (Doc. No. 18, FAC ¶¶ 15–18.) Plaintiff alleges that the independent testing showed that the bedsheet set purchased by Plaintiff did not have a thread count of 800 but instead had a thread count of 288 (64% lower than the represented thread count). (Id. ¶ 18.) Second, Plaintiff alleges: "it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." (Id. ¶ 24; see also id. ¶¶ 29–33; Doc. No. 39 at 1–2, 9.)

Defendant argues that Plaintiff's claims fail because, if the Court accepts Plaintiff's allegations as true that it is physically impossible for cotton fabric to have a thread count

of 600 or more, then no reasonable consumer could be deceived by the representations at issue. (Doc. No. 36-1 at 9–10; Doc. No. 41 at 4.) The Court agrees with Defendant.

The Ninth Circuit's recent decision in Moore v. Trader Joe's Co., 4 F.4th 874 (9th Cir. 2021), is instructive on this point. In Moore, the plaintiffs brought claims under various states' consumer protection law, including California's consumer protection laws, against Trader Joe's based on Trader Joe's marketing of its store brand honey as "100% New Zealand Manuka Honey." Id. at 876. The plaintiffs in Moore contended that this marketing was false, misleading, and deceptive because testing showed that only between 57.3% and 62.6% of the honey was derived from Manuka flower nectar. The Ninth Circuit held that Trader Joe's Manuka Honey labeling would not mislead a reasonable consumer as a matter of law, and the Ninth Circuit affirmed the district court's dismissal of the claims without leave to amend. Id. at 877, 886.

In reaching this holding, the Ninth Circuit explained that "a reasonable consumer would be quickly dissuaded from Plaintiffs' 'unreasonable or fanciful' interpretation of '100% New Zealand Manuka Honey' based on . . . the impossibility of making a honey that is 100% derived from one floral source." Id. at 883. Thus, "given the sheer implausibility of Plaintiffs' alleged interpretation," no consumer of any level of sophistication would reasonably interpret the label in the manner proposed by the plaintiffs (i.e., that the honey was 100% derived from Manuka flower nectar). Id. at 884. A reasonable consumer would not interpret Trader Joe's label "as promising something that is impossible to find." Id. at 883; see also Welk v. Beam Suntory Imp. Co., 124 F. Supp. 3d 1039, 1042–44 (S.D. Cal. 2015) (dismissing UCL and FAL claims with prejudice on the grounds that no reasonable consumer could be deceived by the use of the word "handcrafted" on bourbon bottle labels in the manner proposed by the plaintiff given the fact that "[m]achines, including stills and other equipment, have always been necessary to make bourbon" (i.e., it is impossible to make bourbon without machines)).

As in Moore and Welk, Plaintiff's theory of consumer deception here is implausible and based on an unreasonable interpretation of the representations at issue. According to

24-cv-01218-H-DEB

Plaintiff's own allegations in the FAC, Plaintiff's proposed interpretation of the phrase "800 thread count" (and any representation of a thread count of higher than 600) in the context of 100% cotton bedsheets is physically impossible to achieve.  (See Doc. No. 18, FAC ¶¶ 24, 29–33; see also Doc. No. 39 at 1–2, 9.)  As such, no reasonable consumer would interpret Defendant's advertising and labeling in the manner proposed by Plaintiff.  See Moore, 4 F.4th at 884.  No reasonable consumer would interpret Defendant's 100% cotton bedsheet advertising and labeling "as promising something that is impossible to find."  Id. at 883.  As such, no reasonable consumer would be deceived by the labeling and advertising at issue in the manner proposed by Plaintiff, and, thus, Plaintiff's UCL and CLRA claims fail as a matter of law.  See id. at 882–84; Welk, 124 F. Supp. 3d at 1044.

Plaintiff notes that several district courts have found similar thread count allegations sufficient to state a claim under various states' consumer protection laws.  (See Doc. No. 39 at 9–11 (citing Lancaster v. Am. Textile Co., Inc., No. 1:22-CV-01280-BKS-ML, 2024 WL 1223746, at *7 (N.D.N.Y. Feb. 27, 2024); Bruno v. Am. Textile Co., Inc., No. 22-CV-2937, 2023 WL 6976826, at *3 (N.D. Ill. Oct. 23, 2023); Hawes v. Macy's Inc., 346 F. Supp. 3d 1086, 1091 (S.D. Ohio 2018); Thomas v. Walmart Inc., No. 23 CV 5315, 2024 WL 1050179, at *2 (N.D. Ill. Mar. 11, 2024).)  The Court acknowledges these decisions, but the Court does not find any of them persuasive.  None of the complaints at issue in these decisions appear to have contained an allegation that the thread count representations at issue were physically impossible to achieve.  Further, Lancaster, Bruno, Hawes, and Thomas are all out-of-circuit district court cases, and, as such, the district courts in those decisions were not bound by the Ninth Circuit's decision in Moore.  In contrast, this court sits in the Ninth Circuit and, therefore, is bound by Moore's holding and reasoning.[1]  See

---

[1]   In addition, in his opposition, Plaintiff cites to an order denying a motion to dismiss in Nelson v. American Textile Company, Inc., No. 23-cv-1879-CAB-SBC (S.D. Cal., Feb. 27, 2024) (See Doc. No. 29 at 1–2.)  The Court also does not find Plaintiff's citation to Nelson persuasive given that the Nelson order contains no reference to or analysis of the Ninth Circuit's decision in Moore.  (See generally Doc. No. 39-2, Straub Decl. Ex. 1.)

<u>Hart v. Massanari</u>, 266 F.3d 1155, 1171 (9th Cir. 2001) ("[c]ircuit law . . . binds all courts within a particular circuit").

In sum, Defendant's representations regarding the thread count of its bed sheets are not misleading to a reasonable consumer in the manner proposed by Plaintiff as a matter of law. <u>See</u> <u>Moore</u>, 4 F.4th at 886; <u>Welk</u>, 124 F. Supp. 3d at 1044. As a result, Plaintiff has failed to adequately state a claim under either the UCL or CLRA, and, therefore, the Court dismisses Plaintiff's UCL and CLRA claims.

Having dismissed Plaintiff's UCL and CLRA claims, the Court must now consider whether Plaintiff should be granted leave to amend those claims. "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." <u>United States v. Corinthian Colleges</u>, 655 F.3d 984, 995 (9th Cir. 2011) (quoting <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296–97 (9th Cir. 1990)). Under this standard, leave to amend should not be granted. The Court's dismissal of Plaintiff's UCL and CLRA claims is based on Plaintiff's allegation that it is physically impossible for 100% cotton fabric to have a thread count of 600 or more. Because it is impossible for Plaintiff to state a viable UCL or CLRA claim without contradicting that allegation, leave to amend should be denied here. <u>See</u> <u>Garmon v. Cnty. of Los Angeles</u>, 828 F.3d 837, 846 (9th Cir. 2016) ("A district court does not abuse its discretion in denying leave to amend where it would have been impossible for the plaintiff to amend the complaint to state a viable claim 'without contradicting any of the allegations of his original complaint.'" (quoting <u>Reddy</u>, 912 F.2d at 296–97)). As such, the Court dismisses Plaintiff's UCL and CLRA claims with prejudice and without leave to amend. <u>See, e.g.</u>, <u>Moore</u>, 4 F.4th at 877, 886 (affirming district court's dismissal of claims without leave to amend where plaintiff could not allege

---

Indeed, the <u>Nelson</u> order contains no analysis at all of the issues presented in that case. (<u>See generally</u> <u>id.</u>)

facts to state a plausible claim that the defendant's labeling is false, deceptive, or misleading).

## Conclusion

For the reasons above, the Court grants Defendant Target's motion to dismiss, and the Court dismisses Plaintiff's complaint with prejudice and without leave to amend.[2]  The Clerk is directed to close the case.

**IT IS SO ORDERED.**

DATED: October 28, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[2]    In its motion, Defendant also moves pursuant to Rule 12(f) to strike certain class allegations from Plaintiff's first amended complaint.  (Doc. No. 36-1 at 15–21.)  Because the Court dismisses all the claims in the first amended complaint with prejudice and without leave to amend, the Court need not address Defendant Rule 12(f) motion to strike.

24-cv-01218-H-DEB